UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
DARA ALABA D/B/A GIDI CONCEPT  )
          Plaintiff        )
                    )
v.                  )
                    )
DUKE CONCEPTS LLC, and      )      COMPLAINT
DAVID ADELEKE P/K/A DAVIDO  )
         Defendants     )
                    )
_____)

## JURISDICTION

1.      Federal Jurisdiction is predicated on diversity of citizenship.

2.      Upon information and belief, the amount in controversy exceeds One Hundred Thousand Dollars ($100,000.00).

## PARTIES

3.      Dara Alaba d/b/a Gidi Concept ("Concept"), is a Massachusetts resident with an address 44 Will Drive, Unit 58, Canton, MA 02021.

4.      Duke Concept LLC ("Duke") is a New York entity and has an address at Lydia Hills, 300 Cadman Plaza, West, 12th Floor, Brooklyn, NY 11201. The registered agent for Duke is United States Corporation Agents, Inc, with an address of 7014 13th Ave., Suite 202, Brooklyn, NY 11228.

5.      David Adeleke p/k/a Davido ("Davido") has an address of 607 River Lawn Court, Atlanta, GA, 30339-2993.

**FACTS**

6.      In May 2017, Concept entered into a contract ("Contract") with Duke for the

performance services of Davido. Exhibit A.

7.      Davido is an international singer signed to Sony Music and is a well-known

African artist. Duke is the agent for Davido.

8.      Pursuant to the Contract, Davido was to perform at the Royale in Boston, MA and

appear for an after party sponsored by the Plaintiff along with Plaintiff's representatives

and affiliates. The events were scheduled for July 28, 2017.

9.      Leading up to the event, Plaintiff his affiliates, marketed the events and expected

to earn over $100,000.00 from the concert and after party and achieve goodwill for their

brand "Stadium Entertainment".

10.     Defendants' and their representatives' approved the artwork for the events at

Exhibit B and setup a schedule of appearances for Davido on July 27, 2017 in Boston,

MA.

11.     In June and July 2017 leading up to the concert on July 28, 2017, another entity

began to promote an afterparty indicating Davido would only be attending an after party

12.     Davido began to market an afterparty from a competing group at in violation of

the contract with Plaintiff.

13.      Davido's representatives insisted that Davido would not be appearing at the

afterparty at "LaFabrica" which was later changed to the "W-Hotel" by the competing

group.  See Exhibit C.

14.     Duke informed the Plaintiff that Plaintiff's afterparty was moving forward and to provide a flyer advertising the event.  See Exhibit D. Duke and Davido's representatives confirmed Davido's attendance at the afterparty

15.     Plaintiff's representatives contacted the competing group via text and informed them to cease and desist their activity.  See Exhibit E.

16.     Duke and Davido continued to inform Plaintiff that the matter was being handled and that the other afterparty would not be moving forward. See Exhibit F.

17.     The competing group continued to contact the public and informed third parties and the public that they were picking up Davido from the airport and that Plaintiff's afterparty would not be moving forward.  See Exhibit G.

18.     Plaintiff was selling VIP packages that included special pricing for those that purchased concert tickets and afterparty tickets and was to received VIP treatment and food/beverages during the concert.

19.     The public was confused by Davido's marketing and advertising of the competing event and began to demand refunds from the Plaintiff.  Plaintiff had to refund all its VIP purchases.

20.     Once Davido arrived in Boston, MA, he demanded that Plaintiff move his hotel to the "W-Hotel" and refused to stay at the Marriott Hotel preapproved by Davido's team.

21.     Davido failed to attend multiple promotional events scheduled to promote the show.

22.     Plaintiff and his representatives were forced to send a cease and desist letter to the competing group. The competing group did not respond.

23.     Once Davido appeared at the Royale to perform, he failed to perform his full set and left the stage twenty (20) minutes early in violation of the Contract.

24.     Before leaving the stage at the conclusion of his shortened performance, Davido announced to the audience that the official afterparty was at the W-Hotel (the competing's group afterparty).

25.     Davido, never appeared at Plaintiff's afterparty.

26.     Davido and his representatives failed to communicate with Plaintiff's representatives after the concert ended.

27.     Davido actions while in Boston caused the Plaintiff to pay additional expenses in excess of Four Thousand Dollars ($4,000.00) in hotel changes and car services and time.

28.     Davido and his representatives, purposely or negligently hindered and sabotaged Plaintiff's events.

29.     The Contract signed by the parties indicated that if Davido did not appear, Plaintiff will be entitled to a full refund.

30.     The Defendants actions indicate a scheme to defraud the Plaintiff.

31.     Due to the Defendants actions, Plaintiff has been harmed in its business in excess of $100,000.00, in costs, expenses and lost revenue.


## COUNT I- BREACH OF CONTRACT- AGAINST DUKE CONCEPTS LLC

32.     Plaintiff repeats the allegations in paragraphs 1-31.

33.     The parties entered in a contract in May 2017.

34.     Duke, as agent of Davido, has a duty to ensure that Davido complied with the Contract, market and promote the concert and afterparty, perform for the agreed upon time limit and appear/host the after party.

35.     Duke breached its duty to the Plaintiff.

36.     As a result of the breach, Plaintiff was harmed in its business.

## COUNT II- BREACH OF CONTRACT- DAVID ADELEKE P/K/A DAVIDO

37.     Plaintiff repeats the allegations in paragraphs 1-36.

38.     The parties entered in an agreement in May 2017.

39.     Davido, had a duty to ensure that Davido complied with the Contract, market and promote the concert and afterparty, perform for the agreed upon time limit and appear/host the after party.

40.     Davido breached its duty to the Plaintiff.

41.     As a result of the breach, Plaintiff was harmed in its business.

## COUNT III- UNJUST ENRICHMENT- ALL DEFENDANTS

42.     Plaintiff repeats the allegations in paragraphs 1-41.

43.     In May 2017 the Defendants accept money from the Plaintiff to have Davido appear and host an afterparty in Boston, MA. In July 2017.

44.     Defendants has a duty to ensure that Davido complied with the Contract, market and promote the concert and afterparty, perform for the agreed upon time limit and appear/host the after party.

45.     Plaintiff promoted the events incurred expenses associated with the events.

46.    Defendants failed to perform for the agreed allocated time upon and failed to appear at the afterparty.

47.    Defendants accepted Plaintiff money and knew of Plaintiff expectations for Davido to perform at the concert for the allocated time and appear at the afterparty.

48.    Defendants knew of Plaintiff's intent to profit from Davido's performance and appearance at the afterparty.

49.    Defendants' knew that Plaintiff expected Davido's compliance.

50.    Defendants' failed to comply.

51.    The circumstances demand that in equity and good conscience restitution be made to the Plaintiff.

52.    Plaintiff was harmed in its business as a result of Defendants actions.

### COUNT IV- NEGLIGENCE MISREPRENTATION
### ALL DEFENDANTS

53.    Plaintiff repeats the allegations in paragraphs 1-52.

54.    Defendants informed Plaintiff that Davido would market the events in Boston, MA, would perform for an hour and would appear/host the afterparty.

55.    Defendants intentionally or negligently made misrepresentations that caused the Plaintiff to pay the Defendants' over Twenty Thousand Dollars ($20,000.00).

56.    Davido did not perform for an hour.

57.    Davido did not appear at the afterparty.

58.    Davido forced the Plaintiff to move his hotel visit to the W-Hotel after approving the Marriott Hotel stay which Plaintiff had paid for in full.

59.    Davido failed to appear at all promotional events scheduled by Plaintiff while Davido was in Boston, MA after approving the promotional events.

60.     Davido announced on social media and after his shortened performance that he

was hosting a competing afterparty at the W-Hotel.

61.     Davido did not attend or host Plaintiff's afterparty.

62.     Defendants' actions harmed Plaintiff in its business.

WHEREOFRE, THE PLAINTIFF DEMANDS AS FOLLOWS:


The Plaintiff demands trial by jury and,

1.      Judgment on all counts;
2.      An award in excess of $100,000.00;
3.      Interest;
4.      Attorneys Fees;
5.      Punitive damages and treble damages; and,
6.      Any other relief this Court deems just and equitable.


DARA ALABA D/B/A GIDI CONCEPT
By His Attorneys,

Christopher Brown, NY Bar # 2953891
Brown & Rosen LLC
Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)

Dated: October 24, 2017                  cbrown@brownrosen.com

# EXHIBIT A



## DAVIDO 2017 PERFORMANCE AGREEMENT

This Agreement, made this 16th day of May, 2017 (hereinafter "the Agreement"), by and between Osita Francis Ugeh of Duke Concept, LLC., (hereinafter the "Agent"), and Dara Alaba of Gidi Concept, (hereinafter the "Purchaser\Event Host");

**WHEREAS**, the Purchaser hereby engages Agent to procure the services of Davido (hereinafter the "Artist") and the Agent hereby agrees to procure the services of Davido to perform at the Event hereinafter provided, upon all the terms and conditions set forth herein.

## 1.     THE EVENT

(a)     The Event shall be a concert\performance within the 2017 Davido USA Tour, presented by Duke Concept, LLC and DMW, wherein Davido shall be the headliner.

(b)     The Event shall take place on July 28, 2017. The location of the Event is To Be Determined, in Boston, Massachusetts. Venue must be approved by Agent prior to the date of the Event.  Rehearsal facilities will be available no less than 24 hours prior to the date and time of the Event.

(c)     All tickets to the Event must be sold through www.universe.com only.

(d)     Artist shall provide a video drop promoting the event upon the execution of this agreement and receipt of initial deposit.

## 2.     COMPENSATION

(a)     Agent shall be paid the total sum of $20,125.00 for Artist's performance on the date of the Event.  This compensation shall be paid as follows:

1.     A Non-Refundable Contract Administration Fee of $125.00 shall be paid to Agent via wire transfer within three (3) days of the receipt of a fully executed contract by the Purchaser.

2.     A Non-Refundable Deposit of seventy percent (70%) of the total sum, $14,000.00 shall be paid to Agent via wire transfer within three (3) days of the receipt of a fully executed contract by the Purchaser.



3.     The balance of thirty percent (30%) of the total sum, $6,000.00 must be paid on or before July 27, 2017.

Wire Transfers, Direct Deposits and Electronic Payments may be remitted as follows:

Bank Name:            Wells Fargo Bank
Account Name:         Duke Concept, LLC
Routing Number:       021200025
Account Number:       1599481361
Wire Transfers:       121000248 (Domestic)

(b)     Notwithstanding the foregoing, in the event that Artist's performances and the recordings thereof are selected to be embodied in an Album and/or Video, Artist shall be entitled to a percentage of royalties derived therefrom.  Such percentages shall be negotiated separately, if required, and placed in an instrument to be signed by all relevant parties.

## 3.     TRAVEL AND ACCOMMODATIONS

The following travel expenses must be paid for and provided by Purchaser, with the confirmation of same to be provided to Agent no less than seven (7) days prior to the date of the Event:

(a)     Seven (7) round-trip airlines tickets from Artist's home town or location.  (Artist's ticket must be either First Class or Business Class)

(b)     Ground transportation to and from airports, rehearsals, sound-check and performance. The vehicle used for transportation shall be a limousine, SUV or Luxury Van suitable to accommodate Artist and six (6) additional persons.

(c)     First class hotel accommodations, one (1) suite and six (6) rooms, for at least two (2) nights in the city where the Event shall take place.

On the date of the Event, Purchaser shall provide reasonable dressing room facilities, a VIP area at the venue before and after the performance, and refreshments for Artist at the Event.



### 4.    GRANT OF RIGHTS

Artist grants to Purchaser the right to produce and promote the Event and to use Artist's image and likeness for the promotion and advertisement of the event.  Furthermore, Artist agrees to be reasonably available to assist in the promotion of the Event.

### 5.    MERCHANDISING

Artist shall have the right to create merchandise bearing his image and likeness to be sold on the date of the event at the Event venue.  If required, Purchaser shall seek the approval of the venue or event coordinator and negotiate in good faith with respect thereto.

### 6.    CREDIT\ADVERTISING

Purchaser will make every effort to obtain radio and television advertisements to promote and market the show in the city where the performance shall take place.  Purchaser will make every effort to ensure that Artist, Agent and all event Sponsors receive credit in all radio and television media advertisements.  Purchaser must include the logo of Duke Concept, LLC, DMW, Sony Music, The Plug, NotJustOk.com and all Sponsors, to be determined, on all promotional materials.  Purchaser shall not be held responsible in the event that a Sponsor's name is left out due to time or space restrictions or due to the date on which Sponsor commits to be a participant. All promotional materials must be pre-approved by Agent.

### 7.    BREACH

In the event that either party defaults with respect to any obligation under this Agreement and said default cannot be cured, such defaulting party shall and hereby does indemnify the other party against, or shall reimburse him or her for reasonable attorneys' fees, disbursements and court costs incurred by the non-defaulting party in bringing suit or other proceeding to enforce any of the terms, covenants or conditions of this Agreement.

In the event that Artist shall default with respect to any obligation under this Agreement, and said default cannot be cured, Agent shall ~~not~~ be held liable for Artist's default.  Agent shall use its best efforts to cure any breach but shall not be liable for any acts or omissions by Artist that are outside of Agent's control. *Agent shall provide full refund to the promoters if the artist fails to show up.*

*Bolaji Ogo    Osita F. Ugeh    [signature]    Jude D*
*Ugeh 05/16/17    05/16/17    05/16/17*



## 8.    FORCE MAJUERE

Agent shall have no liability to Purchaser in the event of the occurrence of an event constituting force majeure, technical defect, inclement weather, the action or inaction of any government or other entity or an Act of God, whereby the Event does not take place, is abandoned or Artist's performance cannot be incorporated therein.

Agent shall have no liability to Purchaser, and shall be entitled to retain the non-refundable deposit, in the event of an event constituting force majeure, technical defect, inclement weather, the action or inaction of any government or other entity or an act of God, which Agent or Artist has no control over, and which prevents Artist from performing.

Each party agrees to notify the other promptly upon discovery of an event of force majeure, as set forth above, which may cause a failure or delay in performance hereunder. Notwithstanding the foregoing Clause, a delay in performance due to an event of force majeure shall be excused only so long as the event continues or until a commercially reasonable alternative method of performance can be implemented.

## 9.    CANCELLATION

In the event of cancellation by Purchaser, Agent and Artist shall not be liable to refund any payment made and Agent may choose to seek from Purchaser any money lost due to said cancellation.

## 10.    INSURANCE

Purchaser shall be responsible for obtaining an insurance policy for the event covering personal injury and damages in amounts and coverage reasonable and customary in the entertainment industry. Purchaser assumes full liability and responsibility for the payment of any and all costs, expenses, charges, claims, losses, liabilities or damages related to or based upon the presentation or production of the Event.

## 11.    COPYRIGHT OWNERSHIP

All recordings and transmissions of the Event, including without limitation, the Program, Video and Album and phonograph records and other reproductions made therefrom (collectively, the "Recordings"), together with the performances embodied therein and all copyrights therein and



thereto, and all renewals and extensions thereof, shall be entirely Purchaser's property, subject only to the payment of royalties as discussed in Paragraph 2 above.

Recordings shall in all respects be deemed "works made for hire" pursuant to and in accordance with the United States Copyright Act. Nevertheless, Purchaser shall, upon Agent or Artist's request, execute and deliver to Artist any assignment of copyright (including renewals and extensions thereof) in and to the Recordings as Artist may deem necessary.

**12.    NOTICES**

Any notice required by this Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party by personal delivery or by certified mail, postage prepaid, or recognized overnight delivery services.

| | |
|---|---|
| If to Agent: | Duke Concept, LLC |
| | c\o Lydia C. Hills, Esq. |
| | 300 Cadman Plaza West, 12th Floor |
| | Brooklyn, NY 11201 |
| | 347-674-8338 (Office) |
| | 347-694-8338 (Fax) |
| | LHills@TheHillsFirm.com and |
| | DukeConcept@hotmail.com |
| | |
| If to Purchaser: | Dara Alaba |
| | Gidi Concept |
| | 44Will Drive, Unit 58 |
| | Canton, MA 02021 |
| | 857-210-2359 |
| | Oalaba1@gmail.com |

**13.    INDEPENDENT CONTRACTOR**

Agent hereby acknowledges and agrees that Artist's services are being provided hereunder as an independent contractor. Accordingly, and pursuant to Artist's request, Purchaser shall not withhold, report or pay withholding taxes with respect to the compensation payable hereunder. "Withholding taxes" shall include, without limitation, federal and state income taxes, federal social security tax, and unemployment insurance tax.



## 14.   MISCELLANEOUS

(i)     All necessary sound and musical equipment will be made available to Artist. Artist may bring, at his own expense, equipment essential to his performance, but if so, the Event Coordinator or Purchaser should be notified in advance, no later than the beginning of rehearsal time.

(ii)     Agent and Purchaser confirm that they are free to enter into this agreement and that both parties will use best efforts to procure any consents necessary from any third parties (including record or merchandising companies) without further compensation.

(iii)     Any appropriate state or federal district court located in the City of New York, in the State of New York, shall have exclusive jurisdiction over any case or controversy arising under or in connection with this Contract, without regard to its conflict of law rules.

(iv)     This Agreement is intended by the Parties to be the complete and final expression of their agreements, and is specifically intended to be an integrated contract with respect to the matters affected herein. Each of the Parties agrees that any prior negotiations, statements, representations or agreements which are inconsistent with any provision in this Agreement are merged in and superseded by this Agreement, and that such party has not relied on any representation or promise, oral or otherwise, which is not set forth in this Agreement.

(v)     This Agreement shall be binding upon and shall inure to the benefit of the employees, agents, attorneys, successors, representatives and assigns of the Parties.

(vi)     Each of the Parties warrants, represents, and agrees that in executing and delivering this Agreement it does so freely and voluntarily, and that such party has received independent legal advice from its attorneys before executing and delivering this Agreement. Hence, this Agreement shall not be construed against any party on the basis that such party was the drafter.

(vii)     The terms of this Agreement shall be kept confidential except to the extent necessary to enforce the terms hereof, or as otherwise required to comply with the law (such as, for example, pursuant to a court order, or where a party must disclose such information to a tax advisor for the purpose of preparing tax returns).



(viii)   If any provision of this Agreement or the application thereof is held invalid, the invalidity shall not affect other provisions or applications of this Agreement which can be given effect without the invalid provisions or application, and to this end the provisions of this Agreement are declared to be severable.

(ix)   No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party waiving the breach.

(x)   This Agreement may be executed in any number of counterparts and by facsimile, each of which shall be deemed an original.

**I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS AGREEMENT IN ITS ENTIRETY AND AGREE TO BE BOUND BY ITS TERMS.**

**IN WITNESS WHEREOF**, the parties hereto have executed and delivered this Agreement as of the _____ day of May, 2017.

Osita Francis Ugeh,
President - Duke Concept, LLC
AGENT

Dara Alaba,
Gidi Concept
PURCHASER



## <u>CONTRACT RIDER</u>

This Rider is part of the attached contract for a performance by Davido, (hereinafter referred to as Artist) and by signing it you are agreeing to supply the Artist with the specified equipment and working conditions that are essential to his performance. Any breach of the terms of this rider is a breach of contract and may cause Artist to refuse to perform, without releasing you from the obligation to pay Artist.

## I.      VALIDITY OF CONTRACT

This rider shall not be binding upon the Artist until the Purchaser executes both this rider and attached contract. No other party is authorized to change this agreement with particular reference (but not limitation) to fee, percentage calculation, supporting acts, security, etc. Where any conflict of interpretation may exist between this rider and the attached contract, in all cases this RIDER shall prevail.

## II.     LIVE BAND

Purchaser acknowledges that a Live Band is required for this Event. Purchaser shall be responsible for the payment to and transportation of Artist's Live House Band, (Kingsmen Band), who will perform with Artist at the Event. Purchaser shall contact the band's management: Kayode at 215-866-6173, to make all arrangements pertaining to the band's performance in conjunction with the Artist on the day of the Event.

## III.    STAGE REQUIREMENTS

The Purchaser shall be responsible for providing all sound, light and audio\visual equipment necessary for the performance by artist, including, but not limited to two microphones, a backline, and all connections, outlets, tools and supplies that are requested by the Artist and Band, if any, for the performance.

## IV.     CHANGING ROOM REQUIREMENTS

The Purchaser shall be responsible for making arrangements with the Venue to provide no less than one (1) Dressing Room for the Artist. The room must be cleaned and sanitized before Artist's arrival, kept at a comfortable temperature and labeled DAVIDO. These rooms are for Artist's exclusive use and should be stocked and ready one (1) hour prior to show time.
Artist's room must be lockable, keys for which are to be delivered to Artist's Agent once all the rooms have been stocked with condiments, beverages, etc.

## V.      SECURITY

The Purchaser shall provide security for Artist throughout the duration of his stay in the city of the performance, to consist of no less than two (2) bodyguards. Security must accompany Artist at all



times while in the city of the performance.

The Purchaser shall be solely responsible for the hiring of adequate security to protect the Artist from the audience, the audience themselves and those without tickets from entering the facility. Only professional uniformed security Personnel may be employed. No on or off-duty police officers shall be allowed to provide such services, except with the express written consent of the Artist's Tour Manager. The security personnel will be responsible for preventing any member of the audience from attempting to mount/ access the stage.

In order for the Artist to perform at his best, it is expressly understood that no person(s) shall be allowed on-stage, backstage or in the technical areas during the Artist's performance, except those person(s) directly connected with the production of the Artist's performance. Unauthorized persons must therefore be asked to leave the stage area immediately and the Purchaser will arrange for such request to be complied with immediately. In addition to the security officers stationed outside the Artist's dressing rooms, the Purchaser shall ensure that no less than two (2) security officers are placed at the backstage door. It is essential that these officers be of a courteous and patient disposition. The Agent shall furnish these officers with a complete list of those persons who may gain admittance to the backstage area.

## VI.    COMPLIMENTARY TICKETS

Purchaser shall provide, at Purchaser's expense, All Access passes for Artist and Artist's entourage, plus Fifteen (15) Complimentary VIP passes with backstage access at the venue for the performance. Tickets and passes should be given to the Agent at least 24 hours prior to show dates.


**IN WITNESS WHEREOF**, the parties hereto have executed and delivered this RIDER as of the 16th day of May, 2017.


_____                    _____
Osita Francis Ugeh,                                           Dara Alaba,
President - Duke Concept, LLC                           Gidi Concept
AGENT                                                              PURCHASER

# EXHIBIT B



# EXHIBIT C



From: **The Premier Events Group** ›

To: Jamilah Murrell ›                          Hide

## DAVIDO LIVE AT LA FABRICA • EMERALD SATURDAYS

Today at 3:29 PM





# EXHIBIT D



# EXHIBIT E



●●○○○ T-Mobile 🛜          7:31 AM          🧭 ✳ 31% 🔋

**Touch to return to call 13:48**

**+1 (347) 200-7253**
last seen today at 4:20 AM

Hi ken,

Our Attention have been drawn to the
False Advertisement made by your
company
to the general Public, advertising an
After party for  Davido's concert in
Boston.
We have not authorized you or your
company to promote any event related
to Davido in Boston.
The only company  authorized to
promote During this Tour in Boston and
environs is STADIUM LLC.
We advise you to desist from further
promotions and take down all promotion
materials you have on your
Social media. We advise you contact
whoever authorized you to go ahead
with promotion and get back your
Money if you made any finically
commitment. The transaction is illegal
and not recognized by David and his

10:36 PM

check this

# EXHIBIT F



# EXHIBIT G



●●●○○ T-Mobile Wi-Fi 📶          3:15 PM          53% 🔋

‹ **104**          Ⓚ          ⓘ
Kenny Noir

> I will call you back. I'm just as confused.

Hit me when you can

> I def will.
>
> *Delivered*

Call me soon so we can figure this out



Call me asap bro

This is what happens when we don't communicate

Just spoke to Davido bro. That AfterParty isn't happening bro. I'm the one picking him up from airport. Tried to tell you this from the beginning. Don't know why you wouldn't call me first. Hit me as soon as you can. His label is calling those other promoters now.

            iMessage